IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES W. OWENS,  )
        Plaintiff,  )
               )  Civ. 14-1037
               )
CAROLYN W. COLVIN,  )
Acting Commissioner of Social  )
Security,  )
        Defendant.  )

**OPINION**

This case is before us on appeal from a final decision by the defendant, Commissioner of Social Security ("the Commissioner"), denying James W. Owen's claim for disability insurance benefits under Title II of the Social Security Act. The parties have submitted cross-motions for summary judgment.

For the reasons stated below, the Court will grant Plaintiff's Motion for Summary Judgment to the extent that a remand for further proceedings is appropriate in this case and deny Defendant's Motion for Summary Judgment.

**I. Procedural History**

James W. Owen applied for Disability Insurance Benefits, under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on February 22, 2013, alleging disability due to impairments in both feet, knees, his right shoulder, lumbar spine as well as posttraumatic stress disorder (PSTD) with an alleged onset date of June 16, 2010. Plaintiff's claim was initially denied on August 20, 2013. A timely request for a hearing was filed by Plaintiff on October 15, 2013. A hearing was held before an Administrative Law Judge ("ALJ") on February 11, 2014, at which Plaintiff was represented by counsel and testified. R. at 29-58. A vocational expert

("VE") also testified at the hearing. By decision dated March 26, 2014, the ALJ determined that Plaintiff is not disabled under §§ 216(i) and 223(d) of the Social Security Act and denied Plaintiff's request for benefits. R. at 9-28. Plaintiff filed a timely review of the ALJ's determination, which was denied by the Appeals Council on July 10, 2014. R. 1-4. Having exhausted his administrative remedies, Plaintiff filed the instant action seeking judicial review of the final decision of the Commissioner of Social Security denying his application.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed

by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520; see McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must

proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 404.1520(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. & Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

### III. The ALJ's Decision

By decision dated March 26, 2014, the ALJ determined that Plaintiff is not disabled under §§ 216(i) and 223(d) of the Social Security Act. R. at 9-28. The ALJ found that Plaintiff has the following severe impairments: multilevel degenerative disc disease, multilevel thoracic spondylosis, back strain, plantar fasciitis, sciatica, a major depressive disorder, a personality disorder not otherwise specified, a bipolar disorder, a post-traumatic stress disorder, relational

4

problem, parent-child problem, and an intermittent explosive disorder. R. 14. The ALJ found that Plaintiff had the following non-severe impairments: gastroesophageal reflux disease, ureterolithiasis, acute sinusitis, asthmatic bronchitis, and tachycardia. R. 14-15. The ALJ determined that none of Plaintiff's severe impairments or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15-16.

The ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work limited to unskilled work, except that he can occasionally perform postural maneuvers such as balancing, kneeling, climbing, crouching, and stooping; with no crawling or climbing of ladders, ropes, or scaffolds; he is required to have a sit/stand option allowing him to stand for five minutes every 60 minutes throughout the day; he requires a low stress environment such that there are few changes in work settings and no fast pace or quota production standards; and he can have only occasional contact with supervisors and coworkers and no contact with the general public. R. 17-21.

In making this determination the ALJ made the following credibility determination:

> … the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 17. In the course of his Opinion, the ALJ further explained that "the medical evidence, treatment history, and activities of daily living do not support the severity" of claimant's allegations of symptoms arising from either his mental or physical impairments. R. 18, 19. The ALJ then reviewed Plaintiff's medical evidence and treatment history regarding his mental and

physical impairments, concluding that his impairments would not affect his ability to perform work activity. R. 18, 20. He further noted that Plaintiff reported that he is able to perform a number of activities of daily living despite his mental and physical impairments. R. 19, 20.

Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that he is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and therefore he is "not disabled." R. 23.

## IV. Discussion

Plaintiff alleges error in multiple ways regarding Plaintiff's alleged conditions of sleep apnea, obesity, and migraine headaches. Specifically, that the ALJ erred in failing to find that his sleep apnea, obesity, and migraine headaches were severe impairments, either singly or in combination; erred in failing to analyze his sleep apnea in combination with his obesity as falling under Listing 3.10 or 3.00 regarding sleep related disorders; and erred in failing to analyze his migraine headaches as falling under Listing 11.00 and 11.03 regarding epilepsy-nonconvulsive epilepsy. Plaintiff also argues that the ALJ erred in failing to properly consider the medical opinions of his treating physicians, Charles Atwood, M.D., Seung Lee, M.D., and John Watters, M.D., primarily with regard to Plaintiff's sleep apnea, obesity, and migraine headaches.

Plaintiff further argues that the ALJ erred in downplaying his serious mental impairments as reflected in the opinions of state agency consultants John Mills, Ph.D. and Vito Dongiovanni, Psy.D.; erred in his consideration of the Veterans Administration ("VA") determination that Plaintiff was 100% individual unemployability; erred in his residual functional capacity determination by not including all of Plaintiff's limitations; erred in his credibility determination regarding Plaintiff's allegations of pain by failing to give reasons for his finding; erred in relying

6

on Plaintiff's report of activities of daily living to show an ability to work; and erred in not giving consideration to either Plaintiff's use of cane or the side effects he experienced from his medications.

While we do not agree with all of the arguments set forth by Plaintiff, we do agree that remand is warranted in this case. Specifically, we find that the ALJ failed to address or account for medical evidence of all of Plaintiff's alleged conditions and whether these conditions caused limitations affecting Plaintiff's ability to work. Specifically, the ALJ never addressed or acknowledged medical evidence of Plaintiff's alleged migraines, sleep apnea, and obesity. As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli, 247 F.3d at 42, citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir.1979). This error of omission necessarily means that we are unable to properly review the ALJ's residual functional capacity determination or his hypothetical question to the VE.

Defendant responds to Plaintiff's argument by arguing that substantial evidence supports the ALJ's determination at Step Two that Plaintiff's sleep apnea, obesity, and migraines were not severe impairments. See D. Br. 27, 28, & 31. However, Defendant must argue by implication that the ALJ considered these impairments as the ALJ did not discuss the relevant medical evidence at all in his decision.

When a Plaintiff's claim is not denied at Step Two, it typically does not matter whether the ALJ correctly or incorrectly found Plaintiff's other alleged impairments to be non-severe, so long as the ALJ properly accounted for all impairments at Steps Four and Five. See Salles v. Commissioner of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, 2007

7

WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D. Pa. March 27, 2006); see also Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006) (Step Two determination is threshold analysis requiring showing of only one severe impairment.). This does not help the Commissioner in this case because although the ALJ thoroughly addressed five of Plaintiff's non-severe impairments, he did not find that Plaintiff's alleged migraines, sleep apnea, or obesity were "not severe."

Even if the ALJ had found these conditions to be non-severe, he did not discuss any possible exertional or non-exertional limitations caused by these conditions or address any potential limitations on Plaintiff's ability to work arising from these conditions at Step Four or Step Five. See S.S.R. 96-8p at *5 (non-severe condition may still affect a claimant's RFC, and in assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"); see also 20 C.F.R. § 404.1545(a)(2) ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.")

Our review of the medical evidence shows that there are abnormal medical signs and laboratory findings supporting the existence of the medically determinable impairments of obesity, sleep apnea, and migraine headaches. See SSR 96-4p ("the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; *i.e.,* medical signs and laboratory findings.")

*Migraine Headaches*

With respect to Plaintiff's migraine headaches, the medical evidence shows that Plaintiff has consistently sought treatment for his migraine headaches and has received medication to address this condition. Although the vast majority of medical evidence shows that Plaintiff primarily sought treatment for the pain in his feet, back, knees, as well as for his mental health and relationship issues, the medical evidence concerning his migraine headaches is sufficient to show that this condition should not have been ignored by the ALJ in his opinion.

An October 21, 2011 Medical Record from Clymer Family Medicine at which Plaintiff appeared complaining of Fibromatosis and Plantar Fasciitis, his patient history summary identifies his medical problems as including mild obstructive sleep apnea and migraines. R. 608, 609.

On July 19, 2012, Plaintiff appeared at the Indiana Regional Medical Center for emergency services related to a back injury. R. 597-599. Under past history, the medical record notes a "History of migraine headaches." R. 597.

In its disability decision letter dated February 11, 2013, the VA found Plaintiff to be disabled under the VA's rules, and listing as one of the impairments supporting disability as Plaintiff's migraine headaches. R. 182-183; see also R. 670, 773.

In state agency consultant Dr. Dongiovanni's Psychological Evaluation of Plaintiff, conducted on March 5, 2013, he noted as one of Plaintiff's diagnoses, "migraine headaches." R. 749. In the History section, Dr. Dongiovanni noted that Plaintiff had been prescribed Imitirex and injections for migraines by Dr. Richard Cassone of Neuropsychiatric Associates, Inc., in December 2012. R. 744.

9

An April 26, 2013 Health Summary completed by Dr. Watters, states as follows:

> Veteran has had migraines since service time in the Military. States he gets approximately one headache a week, which he would classify as a migraine; however, he gets other headaches during the week, which he would classify as 5 times per week but less severe. Headaches typically occur back of the head and then in in front of the [skull]. Can be debilitating at times. He has Imitrex, which he takes orally and sometimes Imetrix injectable, which will ultimately improve but not always resolve the headaches. Has never been offered anything as a preventative measure.

R. 694. Dr. Watters also makes the following reference: "he takes tramadol for orthopedic pain, which helps, but states this makes him have worse headaches; however he is willing to continue. . . . Veteran does note NSAIDS help his headache but not his joint issues." R. 694. In his assessment and plan, Dr. Watters noted as follows:

> 2. Chronic headaches, mostly migraines. Veteran states he has had CT of the head, which was negative ruling out more serious underlying cause. I have suggested medication to try to reduce severity and frequency of headaches; however, Topamax is not a good choice with history of nephrolithiasis. . . . Will have him return for blood pressure check and report of how headaches are doing. Will also continue sumatriptan both in the pill and injectable form as needed. He was instructed not to use more than 3 doses a week, as this could set up for chronic severe headaches.

R. 696.

In a May 16, 2013 VA dentistry note, the record indicates that Plaintiff is prescribed the migraine medication of sumatriptan succinate, both oral and injectable. R. 680; see also R. 669, 706. On June 3, 2013, the record reflects that Plaintiff sought refills of his sumatriptan injectable medication. R. 714. The VA medical records also note and/or treat Plaintiff for migraine complaints on June 13, 2013 and July 25, 2013. R. 668, 704.

On June 22, 2013, Plaintiff completed a Function Report in which he reported that he had "migraine head pain" r. 304, and that he currently takes sumatriptan, r. 311. On October 2, 2013, Plaintiff completed a Disability Report in support of his appeal from his initial denial. R. 313-321. In this report, Plaintiff stated that there has been a change for the worse in his conditions in that he has had an "increase in migraines & anxiety." R. 313, 319. He also reported that he had been to the Indiana Regional medical Center on May 5, 2013 for his migraines. R. 317. The medication list attached to the report lists sumatriptan in both oral and injectable forms. R. 322.

On December 12, 2013, plaintiff was treated by Dr. Watters at the VA for his migraines, with Dr. Watters recommending a non-formulary drug request for toradal (ketorolac injection) and providing the justification that "vet gets recurrent migraine headaches – often ends up in ecc where they are relieved with toradol IM – is this something we can provide from the VA to keep him out of the ECC?" R. 775-776. Dr. Watters also notes that the reason for selecting toradal is that it is the "only treatment option available for specific indication." R. 775.

On September 11, 2013, the medical record notes Plaintiff's medications for migraines, including instructions for injecting sumatriptan. R. 801-802. An occupational therapy consultation on October 17, 2013, noted Plaintiff's diagnosis of migraines and indicated that Plaintiff reported frequent migraine headaches. R. 795-797. At his follow-up appointment with Dr. Watters, the doctor continued to prescribe Imitrex as needed, as well as "lamotrigine addition verapamil" and noted that Plaintiff has "not noticed reduction in number [or] severity of headaches." R. 815-816.

On January 30, 2014, Dr. Watters issued a Physician Note regarding Plaintiff's health in which he stated that Plaintiff has reported that "he is unable to hold a job as he is out sick so frequently from back and migraine pain." R. 877. Dr. Watters further states that Plaintiff

> has frequent migraines that are debilitating. Gets up to 3 or 4 headaches weekly. When they come he is unable to think or function. Stress will make them worse. Can last for quite some time despite treatment. He does not feel he can work due to the severity and number of headaches as well.

R. 877.

In addition, throughout Plaintiff's VA medical records there are several notations that Plaintiff has a history of chronic migraines as well as the related medications prescribed for the condition, but the records include no further discussion or active treatment of the condition.

### *Obesity*

The medical records documenting a disability-related issue with obesity are primarily from VA medical records in which Plaintiff is being encouraged to address his weight issues through healthy lifestyle changes. His obesity appears to have first been addressed at the VA on April 26, 2013. R. 669,706. On April 29, 2013, the health risks of obesity were reviewed with Plaintiff. R. 692-693. On May 2, 2013, Plaintiff participated in a telephone weight consultation regarding weight loss. R. 686-687. Medical evidence also indicates a consistent, elevated Body Mass Index for Plaintiff from September 2013 through December 2013. R. 803, 770, 769, 768.

We cannot say that his obesity impacted his abilities over and above his complaints of pain in his knees, feet, hips, and shoulder, because his obesity was not addressed by the ALJ. As noted the medical evidence regarding obesity is scant, however, because it is possible that this condition has an effect on his abilities, it should be addressed upon remand.

*Sleep Apnea*

There is also little medical evidence concerning Plaintiff's diagnosis of sleep apnea. The medical records show that his sleep apnea appears to be mild and does not affect his abilities. See R. 798-800, 803, 809. Nonetheless, this condition should be addressed by the ALJ upon remand.

Our review of the ALJ's assessment of the above medical evidence shows that he failed to properly consider all of the medical evidence and failed to adequately explain his conclusions because not all of Plaintiff's conditions were addressed. It follows that the failure to address all of the medical evidence means that the ALJ's RFC determination cannot be adequately reviewed. We therefore also conclude that the vocational expert's assessment of Plaintiff's ability to perform work was based on a possibly incomplete hypothetical because it failed to account for all of his limitations.

It is apparent that the ALJ's opinion thoroughly addressed the medical evidence he did consider in a comprehensive manner in arriving at his ultimate determination. However, because we find that the ALJ does not refer at all to Plaintiff's migraine headaches, sleep apnea, or obesity we cannot say that the ALJ properly considered all the medical evidence of record or that his decision is supported by substantial evidence.

We recognize that neither Plaintiff nor his counsel specifically raised these issues during the hearing before the ALJ. In this regard, at Step Two the ALJ did thoroughly address several of Plaintiff's other conditions that were not raised at the hearing. R. 14-15 (discussing gastroesophageal reflux disease, ureterolithiasis, acute sinusitis, asthmatic bronchitis, and tachycardia.) The fact that the ALJ seriously considered Plaintiff's medical evidence with

regard to Plaintiff's rather ordinary sinusitis and other medical conditions, but not address clear medical evidence of migraine headaches, sleep apnea, and obesity further supports a remand in this case. We are not saying that had the ALJ considered such evidence that the outcome would have been different, but that it was incumbent upon the ALJ to, at a minimum, acknowledge and account for all of Plaintiff's conditions. It is the need for further explanation that mandates the remand on this issue.

While we need not address Plaintiff's argument that the ALJ erred in his assessment of the VA's determination that he is disabled, we do note that the VA's disability determination relied heavily on Plaintiff's recurrent migraine headaches. R. 182-183. Thus, although the ALJ was correct that the VA's determination of disability is not binding and relies on different criteria than the SSA, the VA's decision does reflect medical evidence of a condition that the ALJ did not address. As such, it was error for the ALJ to not address Plaintiff's migraine headaches when discounting the VA's determination of disability.

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427. "Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d at 317, quoting Smith, 637 F.2d at 970.

Reviewing the supporting evidence and the ALJ's reasoning and review of the evidence as it underlies the ALJ's opinion; we find that the ALJ's opinion is not supported by substantial

14

evidence because it does not account for all of the relevant medical evidence. Accordingly, we will remand the decision of the Commissioner for a consideration of the medical evidence.

## V. Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC and his hypothetical question to the VE are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. Remand is required so that ALJ can address the medical evidence concerning Plaintiff's obesity, sleep apnea, and migraine headaches.

Accordingly, we will remand this case to the ALJ for reconsideration consistent with this Opinion.

August 6, 2015
Date

Maurice B. Cohill, Jr.
Senior United States District Court Judge